BUNKERS, Appellant v. MOUSEL, Respondent

(154 N.W.2d 208)

(File No. 10414. Opinion filed November 21, 1967)

**Richard R. Murphy,** Sioux Falls, for plaintiff and appellant.

**Davenport, Evans, Hurwitz & Smith, Deming Smith,** Sioux Falls, for defendant and respondent.

BIEGELMEIER, Judge.

This is an action for damages resulting from injuries received when plaintiff was starting a gasoline driven rotary lawn mower preparatory to mowing the lawn on defendant's farm.

Plaintiff was within 15 days of being 20 years old and had lived on a farm most of that time. He first started working for defendant doing general farm work when he was around 12 years old. Thereafter he operated a tractor, elevator, combine and corn picker, helped with baling hay, grinding feed and other farm work, some of which was on his parents' farm, some on defendant's farm. From these experiences he was familiar with a number of different kinds of machinery with moving parts.

In March of 1964 he was hired full time to work on defendant's farm. The mower was a larger unit of the rotary type familiar to most home owners with lawns to mow; it had a removable curved metal shield to enclose the sides which had been removed to better cut tall grass or weeds. Two large wheels propel it at the rear and a smaller one balances the front. When the shield was removed it left a large space on each side and below the steel circular cover that housed the grass cutting blade. Plaintiff realized it had this shield as it had been mentioned to him the fall before that it could be taken off for the purpose indicated.

Defendant and his wife went on a fishing trip on Tuesday leaving the children on the farm with plaintiff whose over-all job was to do chores, cultivate if the weather permitted and, if too wet, to take care of the place and do anything around the farm and yard that needed to be done. He was not told specifically to mow the grass, but on the day of the accident, Wednesday, June 17, 1964, it looked like it needed a little mowing so he decided to mow it. A few days before two of defendant's children—a 14-year-old girl and a 10-year-old boy—were mowing the yard across the road with this mower without the shield, and plaintiff helped them about a half hour.

On Wednesday he took the mower out of the machine shed, checked the spark plug, pulled at it for 15 minutes, but "it wouldn't start". While doing this he saw the blade, looked at it and noticed it had a few nicks in it and thought it needed sharpening. He propped or tipped the machine up so he could remove the bolts and plate to get the blade off and could see the shield or guard was not on it. From having seen it the first time,

he testified he knew that if he got his foot under it, it could be very dangerous. He sharpened the blade with an electric driven sharpener and replaced it in the mower. The machine failing to start, as the evidence shows and the trial judge commented, he did a very unusual thing which indicated his ingenuity. He saw an electric motor on the bench, set it on the floor in line with the mower, took a V-belt off and connected a pulley on the motor drive shaft to a pulley on the mower with another longer V-belt. He then ran the electric motor which acted as an electric starter and caused the gasoline engine on the mower to start; this caused the blade he had sharpened to revolve in the manner it did while cutting grass—a fact plaintiff knew. He shut the electric motor off and walked around from the back of the mower to its right side to replace the belt he had taken off the mower. In his own words "I was just going around the right side and just ready to lean over and put the belt on and I stepped down into the mower with my right foot." The injuries sued for resulted.

The trial court directed a verdict for defendant and plaintiff appeals from the judgment thereon. In so doing, plaintiff states there are no real questions of fact (with which we agree), that the result depends on the inferences to be made from these facts and the question of law presented is whether the directed verdict denied plaintiff his constitutional right to a jury trial.

In determining whether the evidence on behalf of the plaintiff is sufficient to warrant submission to the jury, plaintiff is entitled to have every controverted fact resolved in his favor and to have the benefit of all reasonable inferences that can be deduced from the evidence. The test is whether there is any substantial credible evidence viewed in the light most favorable to the plaintiff which would tend to sustain a verdict. Parham v. Dell Rapids Township, 1963, 80 S.D. 281, 122 N.W.2d 548. Plaintiff, however, may not claim the benefit of a version of the relevant facts more favorable to his contentions than he himself has given in his own testimony. Miller v. Stevens, 1934, 63 S.D. 10, 256 N.W. 152, 156. That is the manner in which the evidence has been detailed as the relevant facts appear to be undisputed.

■ ■ The motions for directed verdict were made on three grounds; that there was no evidence of negligence on the part of defendant which was the proximate cause of the accident; that it was contributory negligence more than slight for plaintiff to cause his foot to come in contact with the mower blade and he assumed the risk inherent in what he did with full knowledge of the danger involved. From the statement to the jury of the reasons for granting defendant's motion, it appears the trial judge based his action on all three grounds. Ordinarily questions of negligence, contributory negligence and assumption of risk are for the jury, Bogh v. Beadles, 79 S.D. 23, 107 N.W.2d 342, provided there is evidence to support them. When the facts are not in dispute or of such nature that reasonable men could not differ, the standards of conduct are for the court to determine. Bogh v. Beadles, supra, Dwyer v. Christensen, 76 S.D. 201, 75 N.W.2d 650, 56 A.L.R.2d 734, and Ries v. Daffin Corporation, 81 S.D. 134, 131 N.W.2d 577. The court has considered the duties and obligations of employers in several rather recent opinions. Ford v. Robinson, 1957, 76 S.D. 457, 80 N.W.2d 471; Stoner v. Eggers, 1958, 77 S.D. 395, 92 N.W.2d 528; Bartlett v. Gregg, 1958, 77 S.D. 406, 92 N.W.2d 654; Ecklund v. Barrick, 1966, 82 S.D. 280, 144 N.W.2d 605; Platt v. Meier, 1967, 83 S.D. 10, 153 N.W.2d 404.

It is sometimes difficult to distinguish defendant's negligence, the effect of plaintiff's assumption of risk or his contributory negligence and the exact ground upon which courts may have rested the decision. Both in Maher v. Wagner, 62 S.D. 227, 252 N.W. 647, and Bartlett v. Gregg, 77 S.D. 406, 92 N.W.2d 654, the status and effect of assumption of risk and contributory negligence are discussed and applied. While mentioning these have oftentimes been confused by the courts and quoting Prosser on Torts, 2d Ed., § 55, as to their distinction, the court in Bartlett wrote:

"In order for an employee to assume a risk there must have been a voluntary acceptance thereof. Such acceptance requires knowledge and appreciation of the risk. The employee's knowledge and appreciation of the risk must either be actual or the risk so plainly observ-

able that the employee must be presumed to have had actual knowledge and appreciation thereof."

At the same term the court stated the duty of an employer to furnish his employee with tools or place to work in the following manner:

"It is the duty of a master to furnish his servants with a reasonably safe place to work and with reasonably safe tools, appliances and equipment with which to perform their work. 35 Am.Jur., Master and Servant, § 138, p. 569. 'Where, however, the master has furnished a suitable place to work and suitable appliances, if the servant is mature and sensible and has had some experience in the work being done he must look after himself as to all obvious dangers in the details of the work. Further, the master cannot be held liable for failure to furnish a safe place to work if the danger is so obvious and is before the servant's eyes to such extent that he must know, by the use of ordinary intelligence, the danger that confronts him, nor can the master be held liable for failure to furnish the servant with safe tools where the servant has equal knowledge with the master as to the safety thereof, as where the tools furnished are of a simple nature in which defects can be readily observed.' 56 C.J.S. Master and Servant § 203, p. 908. * * * Plaintiff was a mature, experienced workman of ordinary intelligence. He was as well qualified as his employer to observe the probable danger * * * 'it is universally held that the master owes no duty to warn or instruct his servants of dangers obvious to a person of ordinary intelligence and judgment.' " Stoner v. Eggers, 77 S.D. 395, 92 N.W.2d 528.

Ecklund v. Barrick, 1966, 82 S.D. 280, 144 N.W.2d 605, followed Stoner by concluding a master could not be held liable to a ranch hand of some experience for failure to furnish a safe place to work when the danger is so obvious and is before the servant's eyes to such an extent that he must know by the use of ordinary intelligence the danger which confronts him and no negligent act of the employer resulted.

In two opinions the court assumed defendants' negligence and denial of recovery was based on the ground the employees were contributorily negligent as a matter of law. Plaintiff, a ranch employee, was injured in Ford v. Robinson, 1957, 76 S.D. 457, 80 N.W.2d 471, while pushing a truck with his arm between it and a granary. It may be inferred the opinion doubted that negligence had been shown. The court pointed out: "his (plaintiff's) knowledge of the danger surpassed that of the defendant Glen Ford." Plaintiff in Ries v. Daffin Corporation, 1964, 81 S.D. 134, 131 N.W.2d 577, lived on a farm all his life and was experienced in the handling of tractors and farm implements; he entered a mixing tank without informing defendants and received fatal injuries.

■ The record shows plaintiff an intelligent young man who, in addition to his experience with farming and the machinery mentioned, was a high school graduate with 15 months further study, including time spent learning carpentry in a cabinet shop. He had used this mower before, had taken the blade off to sharpen it and was well acquainted with its use, construction and the danger of injury if he came in contact with the blade while it was in operation. There was no latent defect, its functioning created no danger not known to the user and plaintiff recognized it was no harmless toy. See Murphy v. Cory Pump and Supply Co., 47 Ill.App.2d 382, 197 N.E.2d 849. He engaged in this work without the knowledge or suggestion of his employer. It is unfortunate this alert conscientious young man received injuries as a result of his initiative and industry, but we must conclude no negligence or breach of duty of his employer has been shown. To paraphrase Ford v. Robinson and Ries v. Daffin Corporation, supra, even if defendant's negligence be assumed, plaintiff's contributory negligence more than slight caused the injury and he may not recover.

Plaintiff cites Lindenberg v. Folson, 1965, N.D., 138 N.W.2d 573, and urges that the "rule" be applied here, evidently meaning the result which allowed recovery. The facts there differ as plaintiff was a housewife with limited experience in potato farming and little experienced with farm machinery. She was in-

jured while removing vines, etc. from picked potatoes on a moving harvester when she lost her balance and caught her hand in a partially unguarded sprocket, a danger of which she was not warned, and said not to be obvious to the user. Haga v. Cook, 1966, N.D., 145 N.W.2d 888, by the same court seems more in point. Plaintiff there was an experienced farm hand and "without any instruction from the defendant employer, improvised a handle made with telephone wire" to replace a broken rigid handle. Plaintiff admitted it was dangerous and he should keep his hands away from moving parts, yet he reached down with a gloved hand and tried to grab the wire while the auger was in operation, causing his injuries. The court said where an employee has actual knowledge of the danger, he assumes the risk incident thereto by continuing to work and being fully aware of the peril and, knowing the danger, he deliberately exposed himself to it.

The trial court ruled correctly and the judgment appealed from is affirmed.

ROBERTS, RENTTO and HANSON, JJ., concur.

HOMEYER, P. J., concurs in result.